UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Chapter 13

Kimberly A. Ulrich,                                       Case No. 13-59610
f/k/a Kimberly A. LaBeau,
                                                          Hon. Phillip J. Shefferly
            Debtor.
_____/


**OPINION AWARDING PRE-CONFIRMATION ATTORNEY FEE
AND REIMBURSEMENT OF COSTS**

**Introduction**

This opinion addresses a pre-confirmation fee application filed by a debtor's attorney in a Chapter 13 case. The Chapter 13 trustee objected. For the reasons explained in this opinion, the Court sustains the Trustee's objections in part, and awards a fee of $5,375.00 and reimbursement of $483.64 of costs, for a total of $5,858.64.

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(d)(2), 28 U.S.C. § 1334, and Local Bankruptcy Rule 83.50 (E.D.M). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

**Facts**

On October 25, 2013, the Debtor filed this Chapter 13 case. Charles J. Schneider PC ("Law Firm") represents the Debtor. A review of the docket shows that the Debtor's case was fairly straightforward and uneventful. The only adversary proceeding was a lien strip of a second mortgage on the Debtor's residence, which was resolved by a consent judgment entered without the

holder of the second mortgage filing an answer to the complaint. The only time that a hearing in the Chapter 13 case was placed on the Court's contested docket was the Debtor's request to adjourn the confirmation hearing, which was not opposed by the Trustee. On March 25, 2014, the Debtor filed a second amended plan, a 36 month plan that provides for the Debtor to retain her residence, make her mortgage payments, catch up her mortgage arrearage, and pay a delinquent water bill. The second amended plan provides for a minimum distribution to unsecured creditors of zero. The second amended plan provides that the Debtor's attorney fee shall be requested by separate application. On May 3, 2014, the Court confirmed the second amended plan.

On May 8, 2014, the Law Firm filed an application (ECF No. 70) for a pre-confirmation fee of $7,784.50 and reimbursement of costs of $483.64. The application details 38.0 hours of services performed by three attorneys and two paralegals at the Law Firm. On May 29, 2014, the Trustee filed objections (ECF No. 75), set forth in seven paragraphs. The first six paragraphs identify 73 separate time entries on the application and argue that the Law Firm should not be compensated for them because all of these entries describe services that are clerical, excessive, or duplicative. In the seventh paragraph, the Trustee objects to the entire amount sought by the application because it is excessive, and argues that it should be reduced because the worksheet that the Law Firm filed in support of the Debtor's second amended plan only estimated a fee of $4,000.00 for all pre-confirmation services. The day after the Trustee filed her objections, the Court issued a notice scheduling a hearing on the application and the objections for Tuesday, June 24, 2014.

At the end of the day on the Friday before the hearing, the Law Firm filed a 30 page answer (ECF No. 79) to the Trustee's objections. The answer responds separately and in detail to each time

-2-

13-59610-pjs    Doc 84    Filed 09/05/14    Entered 09/05/14 15:30:07    Page 2 of 20

entry identified in paragraphs 1 through 6 of the Trustee's objections, as well as to the overall excessiveness argument set forth in paragraph 7 of the Trustee's objections.

During the hearing, the Law Firm and the Trustee both elaborated on the points they made in the application and the objections. However, because the Law Firm's answer had only been filed at the end of the previous Friday, neither the Trustee nor the Court had the opportunity to fully review it. As a result, the Court considered the parties' arguments, but took the application and the objections under advisement and rescheduled the hearing to rule upon them two weeks later, on July 8, 2014. The Court expressly reserved the right to ask questions at the adjourned hearing based upon its review of the Law Firm's answer, but also stated it would not take further arguments at the adjourned hearing. The Court did not authorize the filing of any additional papers.

Before the adjourned hearing, the Law Firm filed a supplement ("Supplement") (ECF No. 82) to its answer on July 3, 2014. The Supplement consists of a chart with data from 152 other Chapter 13 cases in this district in which the Law Firm had filed a fee application. For each of those cases, the chart purports to show the amount requested by the Law Firm, whether any objections to the application were filed, the disposition of the objections, the amount awarded, and the identity of the assigned trustee and the assigned judge.

At the adjourned hearing, the Trustee objected to the Court's consideration of the Supplement, arguing that it was improperly filed after the Law Firm's application and the Trustee's objections had already been taken under advisement by the Court. At the end of the adjourned hearing, the Court informed the parties that it would issue a written order with respect to the Law Firm's application and the Trustee's objections.

## Positions of the Parties

The Trustee does not object to the hourly rates charged by the Law Firm. Nor does the Trustee contend that the services described in the application were not performed by the Law Firm. However, the Trustee does argue that many of the services performed by the Law Firm were clerical in nature, others were excessive in the time that they took to perform, and still others were duplicative. More generally, the Trustee argues that this was a straightforward Chapter 13 case with no complex or difficult issues, and that even the Law Firm, in the worksheet that it filed in support of the second amended plan, estimated its fee in an amount much less than it now requests.

The Law Firm's answer provides a detailed explanation for each of the 73 entries to which the Trustee objects. The Law Firm insists that its services were not clerical, nor were they excessive or duplicative. The Law Firm argues that it should not be held to its estimate on the worksheet since the Law Firm only made that estimate for "feasibility purposes," when seeking confirmation of the Debtor's second amended plan. The Law Firm explains that this figure is not intended to estimate the actual fee that had been incurred, but instead is just a figure routinely placed in a plan calculation to assist the Law Firm in determining whether a debtor's plan is properly funded. Finally, the Law Firm argues that the Supplement shows that the Trustee in this case objects to the Law Firm's fees more frequently than do the other trustees in this district.

## Applicable Law

Section 330 of the Bankruptcy Code governs compensation of attorneys in bankruptcy cases. Section 330(a)(1) authorizes a bankruptcy court to award reasonable compensation to a professional person employed under § 327 or § 1103 for actual, necessary services, and reimbursement for actual, necessary expenses. Section 330(a)(3) instructs how to determine reasonable compensation:

> [i]n determining the amount of reasonable compensation to be awarded to . . . [an attorney or other] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

An attorney representing a debtor in a Chapter 13 case is not employed under either § 327 or § 1103. However, § 330(a)(4)(B) states that a bankruptcy court "may allow reasonable compensation" to the attorney for an individual debtor in a Chapter 13 case "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."

Federal Rule of Bankruptcy Procedure 2016(a) governs the procedure for an attorney to apply for compensation and reimbursement of expenses. Local Bankruptcy Rule 2016-1 (E.D.M.) sets forth specific requirements for an application filed in the Bankruptcy Court for the Eastern District of Michigan. Local Bankruptcy Rule 2016-1(a)(3) requires that a fee application in a Chapter 13 case for more than $3,500.00 must "specifically identify the circumstances of the case that make the amount requested reasonable."

"The burden of proof is on the professional requesting compensation for his or her services from the bankruptcy estate." In re Sharp, 367 B.R. 582, 585 (Bankr. E.D. Mich. 2007) (citing In re New Boston Coke Corp., 299 B.R. 432 (Bankr. E.D. Mich. 2003)). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." In re Pettibone Corp., 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (citation omitted).

Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334 (6th Cir. 1991), is the seminal case in the Sixth Circuit regarding attorney fees in a Chapter 13 case. Decided before the current version of § 330(a)(3) and (4), Boddy vacated a bankruptcy court's award of a fee for a debtor's attorney in a Chapter 13 case because the bankruptcy court applied an incorrect standard to determine the reasonableness of the fee. The Sixth Circuit began its opinion by quoting the version of § 330(a) in effect at that time, which provided "in part, for 'reasonable compensation for actual, necessary services rendered . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title . . . .'" Id. at 336-37 (quoting § 330(a)(1)). The Boddy court next discussed the use of the lodestar method by courts construing federal fee-shifting statutes, explaining that such courts "arrive at an attorney's fee by first determining the 'lodestar' amount, which is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." Id. at 337 (internal quotation marks and citations omitted). Noting that "[t]he Supreme Court has made it clear that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees," the Sixth

Circuit held that bankruptcy courts too must use the lodestar method to calculate fees in bankruptcy cases. Id.

In addition to requiring use of the lodestar method, Boddy explained that a "court can legitimately take into account the typical compensation that is adequate for attorney fees in Chapter 13 cases, as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." Id. at 338. Finally, Boddy recognized that there may be other relevant factors in addition to the lodestar components: "The bankruptcy court may also exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area." Id. (citing Harmon v. Levin, 772 F.2d 1150, 1152, n.1 (4th Cir. 1985)).

After Boddy was decided, § 330(a) was amended in 1994 to add subsections (a)(3) and (4). The present version specifically lists various factors that a bankruptcy court is required to consider in connection with fee applications for professionals employed under § 327 or § 1103, and is permitted to consider in connection with fee applications filed by debtors' attorneys in Chapter 13 cases. The factors now expressly listed in the statute are substantially similar to the potentially relevant factors identified in Boddy, although they are now more specifically described.

**Discussion**

In this case, the Trustee does not object to the reasonableness of the Law Firm's hourly rates. Therefore, the first component of the lodestar analysis is not in controversy. However, as noted earlier, the Trustee does object to the reasonableness of the time expended by the Law Firm. First, the Trustee argues that many of the time entries in the Law Firm's application, when looked at

individually, are unreasonable because they are clerical, duplicative or excessive. Second, the Trustee argues that the total of the hours expended by the Law Firm is unreasonable quite apart from whether any specific time entries are unreasonable. The Court will first consider the Trustee's objections to the reasonableness of specific time entries and then consider the Trustee's objection to the reasonableness of the total hours expended by the Law Firm.

Paragraph 1 of the Trustee's objections identifies six entries as objectionable because they are clerical in nature. The Law Firm's answer specifically explains each of these entries. While the Court agrees with the Trustee that clerical services are not compensable, the Court concludes after examining each of the identified time entries and the Law Firm's explanation for them, that the services reflected in these entries are not clerical in nature.

For example, the very first entry that the Trustee objects to as clerical consists of an entry of 0.1 hour by Erin Bartos, an attorney at the Law Firm: "Telephone communication from Christine at Debtor's employment re: clarification of Debtor's withholding and deductions on paycheck." In the Court's view, it is not unreasonable for an attorney for a Chapter 13 debtor to have to speak with someone at a debtor's place of employment to clarify issues raised by a pay order directed to the debtor's employer. While it is true that a non-lawyer can and should be assigned the task of discussing ministerial matters regarding a pay order, there may be issues that require the exercise of professional judgment. These are best left to an attorney, not a clerical worker. There are unquestionably some services that are truly clerical in nature and should not be performed by attorneys: stuffing envelopes, preparing proofs of service, and preparing transmittal letters that simply enclose documents. But the time entries of which the Trustee complains are not of that nature. They seem to the Court to involve the exercise of professional judgment or legal advice.

The Court is satisfied with the Law Firm's explanation of these tasks. Paragraph 1 of the Trustee's objections is overruled.

Paragraph 2 of the Trustee's objections identifies another three time entries as objectionable because they too are clerical in nature. The specific entries referenced in this paragraph concern preparation of correspondence and detailed voice mail messages left for the Debtor. The Law Firm's answer explains that voice mail messages that do not contain substantive information are "no charged." As noted above, transmittal letters that do nothing more than enclose documents are indeed clerical in nature. They can and should be routinely performed by a secretary or administrative assistant. The same is true for voice mail messages. But some communications, whether by voice mail or by letter, do require a lawyer's attention and service. Some communications contain explanations, or provide legal advice, or identify questions that need to be answered by a client. The Law Firm's answer provides a sufficient explanation of the correspondence and voice mail messages identified in paragraph 2 of the Trustee's objections to support the Law Firm's contention that these particular entries are not clerical in nature. Paragraph 2 of the Trustee's objections is overruled.

Paragraph 3 of the Trustee's objections identifies 58 time entries as objectionable because they are either excessive in the amount of time that the Law Firm took to perform the services described, or they are duplicative of some other service performed by the Law Firm in this case. The Trustee does not explain how any particular time entry is objectionable as either excessive or duplicative other than to say generally that the time entries identified in paragraph 3 are objectionable because of the experience of the Law Firm, the hourly rates of the Law Firm, and the nature of this case. The Law Firm's answer provides a detailed explanation of each of the time

entries identified in paragraph 3 of the Trustee's objections. For example, in response to the Trustee's objection to the time entries to prepare for multiple confirmation hearings, the Law Firm explains that there were three adjourned confirmation hearings in this case. Each adjournment had a different cause: the Trustee needed additional information and documentation; a tax claim was discovered; and the Debtor needed to keep part of her income tax refund for house repairs. The time entries do not reflect that this was a case where confirmation was repeatedly adjourned to address the same issue.

In the abstract, the Trustee is no doubt correct that an attorney should not be paid for working two hours on a job that should only take one hour. Nor should an attorney be paid twice for the same service. However, the Law Firm's answer provides a detailed explanation of each specific time entry identified in paragraph 3 of the Trustee's objections as excessive or duplicative. The Law Firm's explanation of each of these time entries supports the Law Firm's contention that these particular entries, when considered individually, are not excessive or duplicative. Paragraph 3 of the Trustee's objections is overruled.

Paragraph 4 of the Trustee's objections identifies another time entry as objectionable because it too is excessive or duplicative in light of the time charged in two other entries in the application. All three entries cover services for the initial and second client interviews; preparation of the pre- and post-petition fee agreements, mandated notices, client check list, the means test, the petition, and schedules; a third meeting with the client to answer questions; review of due diligence documents; preparation of notice; and the delegation of other tasks to an associate and a paralegal. The Law Firm's answer sufficiently explains why each of the tasks described in these three specific time entries was performed, why each of them took the time that was charged, and why, when

considered individually, these entries are neither excessive nor duplicative. Paragraph 4 of the Trustee's objections is overruled.

Paragraph 5 of the Trustee's objections identifies two time entries as objectionable because they are duplicative in nature. Both of these time entries relate to meetings involving attorneys at the Law Firm. One of the entries is for 12 minutes, and the other is for 18 minutes. The Law Firm's answer provides sufficient explanation for each of these meetings and how they each advanced the resolution of issues in the Debtor's Chapter 13 case. Paragraph 5 of the Trustee's objections is overruled.

Paragraph 6 of the Trustee's objections identifies one time entry that is objectionable because it appears to relate to a claim that was not filed in the Debtor's bankruptcy case. The Law Firm's answer agrees that this time entry is an error and should not be compensated.

Paragraph 7 of the Trustee's objections does not identify specific time entries as objectionable. Instead, paragraph 7 objects to the "excessiveness" of the total fee requested. In support, the Trustee relies upon the worksheet that the Law Firm filed with the Debtor's second amended plan that estimated its pre-confirmation fee for this case at $4,000.00. Paragraph 7 notes that the Law Firm's application shows that by March 25, 2014, the date that the Law Firm filed the worksheet, the Law Firm had already incurred a pre-confirmation fee of $5,407.00. According to the Trustee, not only was the worksheet estimate wrong when it was filed, but it also shows that the Law Firm was not adequately monitoring its fee along the way. At the hearing, the Trustee elaborated on the objection in paragraph 7, emphasizing that this was a routine Chapter 13 case, with no novel or complex issues, no litigation, confirmation of a plan with little or no dividend to unsecured creditors, and no specific circumstances that make the requested fee reasonable. The

Court construes paragraph 7, as explained by the Trustee at the hearing, as objecting to the reasonableness of the total hours expended by the Law Firm.

The Law Firm responds by arguing that the worksheet's estimate of its fee is irrelevant. According to the Law Firm, this estimate is only made for purposes of showing that the Debtor's plan is feasible. The Law Firm describes this estimate as a "plugged" number that is not intended to reflect the actual attorney fee that the Debtor will be required to pay, but instead is intended to just get the Debtor's plan through a feasibility objection at confirmation. Moreover, regardless of the estimate on the worksheet, the Law Firm asserts that there is no dispute that the Law Firm expended all of the time described in its application and should not be penalized for taking what it considers to be the time necessary to diligently represent its client.

Paragraph 7 of the Trustee's objections and the parties' arguments about paragraph 7 at the hearing raise two important questions. First, what is the effect of the estimate in this worksheet? Second, may a bankruptcy court make an overall reduction of a requested fee where the hourly rates are not challenged and where specific time entries, when individually scrutinized, appear to be reasonable, yet when added together, produce a total number of hours – and hence a total fee – that appears excessive in light of the nature of and issues in the case and the experience of the attorneys handling the case? The Court will address these questions in sequence.

In the Court's view, the worksheet serves at least three important functions. First, it requires a debtor's law firm to look at how much it is spending on behalf of a debtor in a given case. This is important because every dollar that the debtor's attorney charges is one less dollar for the debtor's creditors. A Chapter 13 debtor's attorney should not blindly perform services without checking from time to time along the way to see that the attorney fee does not become disproportionate to the

-12-

benefit of the Chapter 13 case to the debtor and the creditors. Second, the worksheet's required estimate provides necessary information for the trustee, creditors and the Court in evaluating the feasibility of a debtor's plan at the time of confirmation. All parties to the case need to know whether the attorney fee has become so large as to sink the debtor's plan by leaving insufficient funds to pay the debtor's creditors. A "plugged" number having no basis in fact, not even attempting to make a good faith estimate of the actual fee, makes a feasibility review pointless. Third, the worksheet's required estimate provides a necessary piece of information to creditors when trying to assess whether the plan provides them with a better treatment than they will receive in a Chapter 7 case. The Law Firm's cavalier treatment of the inaccurate estimate that it placed on the Debtor's worksheet in this case defeats all three of these purposes.

To be sure, the estimate in the worksheet is not a binding cap on the fee that a Chapter 13 debtor's attorney may seek. It is just an estimate. But that does not mean that it is irrelevant. By definition, this estimate reflects what the attorney handling the case – presumably the person most knowledgeable about the case – believes that the fee for his or her services will be. The estimate's importance derives from the fact that it must be made by the very person who is doing the work in the case.

In this case, the Law Firm's estimate is wildly off base from the fee that it now requests in its application. The estimate did not come close to covering even the amount that the Law Firm had accrued as of the date of the estimate, let alone all of the pre-confirmation fee that it now seeks. The Law Firm's own estimate of its pre-confirmation fee – $4,000.00 – tends to show that the pre-confirmation fee now requested by the Law Firm – $7,784.50 – is unreasonably large. The worksheet therefore supports the Trustee's objection in paragraph 7.

-13-

The answer to the second question raised by paragraph 7 of the Trustee's objections is more complicated. As explained above, the Law Firm's detailed explanations in its answer adequately respond to each of the Trustee's objections to specific time entries. Each of these time entries, when viewed in isolation, and against the backdrop of the Law Firm's detailed explanations, do seem to be reasonable – or at least the services described in them are not clerical, excessive, or duplicative, as the Trustee contends.

On the other hand, the Court is struck by the overall magnitude of the fee requested in this case. This is a routine Chapter 13 case, with no complex issues, no contested litigation, no objections to the Debtor's plan by any creditors, and a dividend to unsecured creditors of 0%. Was it reasonable for the Law Firm to expend 38.0 hours on a case with these attributes?

Local Bankruptcy Rule 2016-1(a)(3) recognizes that there are cases with specific circumstances that may drive up the fee in a particular Chapter 13 case beyond what a routine case would typically cost. The rule sets a threshold amount of $3,500.00, above which an explanation of specific circumstances is required. That figure is not arbitrary. It is in the local rule because it reflects many years of experience in thousands of Chapter 13 cases filed in the Bankruptcy Court for the Eastern District of Michigan. It represents a figure that is understood by the bench and bar to be a presumptively reasonable fee for a standard Chapter 13 case, without complex issues or other circumstances that may increase the fee in a given case.[1] The $3,500.00 presumptively reasonable

---

[1] The $3,500.00 figure actually appears in two places in Local Bankruptcy Rule 2016-1. Local Bankruptcy Rule 2016-1(a)(3) sets that figure as a threshold, above which an explanation of specific circumstances is required. Local Bankruptcy Rule 2016-1(c) also uses this figure, by permitting an award of a pre-confirmation attorney fee and reimbursement of expenses up to $3,500.00, to be made in an order confirming a Chapter 13 plan even without a separate fee application being filed.

-14-

fee referenced in the local rule is consistent with the experience of other bankruptcy courts throughout the country that have also established a presumptively reasonable fee in a Chapter 13 case.[2]

The Law Firm's application requests a fee that is more than double the $3,500.00 figure in Local Bankruptcy Rule 2016-1(a)(3). The application purports to offer an explanation of the specific circumstances that warrant such a high fee in this case. But the explanation describes circumstances that are common to many Chapter 13 cases: preparation of a lien strip adversary proceeding; preparation for § 341 meeting of creditors; amendments to schedules I and J based upon the Debtor's change of employment; meetings with the attorneys at the Law Firm; preparation for confirmation hearing and adjourned confirmation hearings; correspondence with Trustee to resolve

---

[2] Out of 111 bankruptcy courts in a 2011 study, the vast majority (90) have fixed a presumptively reasonable fee. Bruce M. Price, <u>"No Look" Attorneys' Fees and the Attorneys Who Are Looking: An Empirical Analysis of Presumptively Approved Attorneys' Fees in Ch. 13 Bankruptcies and a Proposal for Reform</u>, 20 Am. Bankr. Inst. L. Rev. 291, 321-22, Figure 1 (Spring 2012). One court "had a percentage-based policy, and 13 . . . had no policy." <u>Id.</u> at 321. Within the 90 courts that have fixed a presumptively reasonable fee, the fixed amount ranged from a low of $1,200 in Wisconsin's Western District, to a high of $4,800 in California's Northern District, Oakland Division. <u>Id.</u> at 323, Figure 2. Overall, across the circuits, the "[a]verage [presumptively reasonable] fee amounts ranged from $2,850 in the Tenth Circuit to $3,420 in the Second Circuit[.]" <u>Id.</u> at 323-24, Figure 4. The study found considerable variation within each circuit between the highest and lowest presumptively reasonable fee amounts. <u>Id.</u> at 324, Figure 5.

Because many districts that recognize a presumptively reasonable fee do not require an attorney requesting such fee to file a detailed fee application, the term "no-look" fee is widely used in such districts. <u>Id.</u> at 296. "[T]his type of standardization, or uniform fee guideline, promotes efficiency by relieving the courts of the administrative burden of reviewing numerous attorney's fee applications; encourages predictability and efficiency for all involved in a chapter 7 or chapter 13 case; and saves time for the court, trustees and the attorneys who represent debtors." <u>In re Williams</u>, 357 B.R. 434, 439 n.3 (B.A.P. 6th Cir. 2007) (concluding "that 'no-look' fees are permissible and should be encouraged in appropriate circumstances") (citing <u>In re Boddy</u>, 950 F.2d at 338) (other citations omitted).

objections to confirmation. None of these tasks are in any way unusual. All of them are routinely performed in Chapter 13 cases. None of these circumstances adequately explain a fee of $7,784.50.

At the hearing, an attorney from the Law Firm explained to the Court that one reason why the fee is so high in this routine case was because of the way that the Debtor insisted on communicating with the Law Firm. The attorney acknowledged that it would have required less time, and a smaller fee, if the Debtor would have just returned her phone calls. But the Debtor did not want others to know of her bankruptcy case, so she insisted on sending emails to the attorney every time there was a question to be answered. This required the Law Firm to devote much more time than a phone call would have taken to handle each of these different questions. Given the fact that the Debtor's plan guaranteed no dividend to her unsecured creditors, the Debtor had little incentive to be disciplined or frugal in her use of legal services by the Law Firm. From the Debtor's perspective, the cost was not paid by her, but was instead paid by her creditors. The Debtor's choice to communicate in an inefficient way is not a special circumstance under Local Bankruptcy Rule 2016-1(a)(3).

As explained earlier, the Law Firm has the burden of proof to show that the fee that it seeks under § 330 of the Bankruptcy Code is reasonable. Ultimately, the Court is not persuaded that the Law Firm has met this burden. Despite the calculation that the lodestar analysis would, at first blush, appear to produce in this case – i.e., 38.0 hours multiplied by the Law Firm's blended hourly rate of $215.00 – the Court concludes that the Law Firm spent too much time on this case. Stated another way, the Law Firm's services in this case were not performed in "a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task

addressed," as required by § 330(a)(3)(D); instead the Law Firm performed these services in an unreasonable amount of time in relation to the circumstances in this case.

Given the Law Firm's skill and experience, the absence of any difficult or complex issues, and all of the other factors in § 330(a)(3) and (4), the Court finds that 20-25 hours represents a range of the reasonable number of hours needed to represent the Debtor in this case through confirmation of the Debtor's plan.[3] A lodestar analysis multiplying the Law Firm's blended hourly rate by the number of hours at either end of this range produces a reasonable fee, and one that still significantly exceeds the $3,500.00 figure set forth in Local Bankruptcy Rule 2016-1(a)(3). The Law Firm's blended hourly rate is $215.00. At 20 hours, this blended rate produces a fee of $4,300.00. At 25 hours, this blended rate produces a fee of $5,375.00. The Law Firm's demonstrated skill and expertise in many bankruptcy cases before this Court, and its success in confirming the second amended plan in this case, support a fee award that is at the upper end of this range. After considering all of the factors set forth under § 330(a)(3) and (4), the Court finds that a reasonable fee in this case is $5,375.00. That works out to 25 hours at $215.00 per hour. The Court will therefore disallow 13 hours of the Law Firm's time and will award the Law Firm a pre-confirmation fee of $5,375.00.

Ordinarily, the Court is reluctant to make an overall reduction of a requested fee when the individual time entries, viewed in isolation, appear to be reasonable for purposes of a lodestar

---

[3] After reviewing thousands of fee applications, the Court's own historical experience is that pre-confirmation hours tend to range from 15 to 20. This is consistent with a recent national study that found "[t]he mean number of hours spent by attorneys representing a chapter 13 debtor in a case that resulted in a discharge fell between 12 and 25 hours." Lois R. Lupica, The Consumer Bankruptcy Fee Study: Final Report, 20 Am. Bankr. Inst. L. Rev. 17, 119 (Spring 2012).

calculation. But not where these time entries, when added together, produce a fee that the Court finds to be unreasonable after "taking into account all relevant factors" under § 330(a)(3) and (4). In these circumstances, the Court does not read Boddy as either demanding that the Court contrive to pick specific entries to disallow, or as prohibiting the Court from making an overall reduction of the requested fee.

In reaching this conclusion, the Court acknowledges that some courts have read Boddy to always require a bankruptcy court, when denying a fee application, to identify each specific hour that is being disallowed. See In re Williams, 357 B.R. 434 (B.A.P. 6th Cir. 2007); B.O.C. Law Group, P.C. v. Carroll (In re McKnight), no. 13-10580, 2013 WL 5182395, at *2 (E.D. Mich., Sept. 11, 2013); Carroll v. Reeds, Reeds, Hammerschmidt & Stickradt, P.C., (In re Hudock), no. 12-13965, 2013 WL 4084773, at *5 (E.D. Mich. Aug. 6, 2013); and In re Sharp, no. 07-12037, 2007 WL 3203134, at *3 (E.D. Mich. Oct. 31, 2007). The Williams court, after discussing the lodestar approach required by Boddy, added that "[i]f the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." 357 B.R. at 439. To support this requirement, Williams cited Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988). However, Norman was not a bankruptcy case, but instead involved attorney fees in a civil rights class action lawsuit against a housing authority. For that reason alone, its value in a bankruptcy case, where there is a statutory scheme that expressly governs fee applications, is limited. Moreover, even outside of the bankruptcy context, Norman's holding that a court must identify each specific hour that it disallows has been seriously questioned. See Loranger v. Stierheim, 10 F.3d 776, 783 n.9 (11th Cir. 1994) (recognizing that the "[t]he genesis of the Norman hour-by-hour rule is somewhat problematic," tracing its history and finding no such

"mandate"). In any event, the Williams court's adoption of this requirement, which does not appear in Boddy, is not binding on this Court. Both McKnight and Sharp, each of which follow Williams, mistakenly cite Williams as a Sixth Circuit opinion.[4] However, Williams was decided by the Sixth Circuit Bankruptcy Appellate Panel, not the Sixth Circuit Court of Appeals. Therefore, it does not control the decision in this case. See First of America Bank v. Gaylor (In re Gaylor), 123 B.R. 236, 242-43 (Bankr. E.D. Mich. 1991) (concluding that, in a multi-judge district, "a decision of the district court cannot be binding on the bankruptcy courts unless it is also binding on the district court as a whole"); In re Boyd, 414 B.R. 223, 232 n.12 (Bankr. N.D. Ohio 2009) (likewise finding that the decisions of a bankruptcy appellate panel "should be considered persuasive authority, but do not have binding precedential effect like decisions from the U.S. Supreme Court or from the court of appeals in which the bankruptcy court is located").

In sum, while Boddy holds that "bankruptcy courts must expressly calculate the lodestar amount when determining reasonable attorney's fees," Boddy, 950 F.2d at 338, neither Boddy nor § 330(a) require a bankruptcy court, when reducing a fee request, to specifically pick out and explain each hour of time that is being disallowed. The law does not limit the Court to viewing each time entry in a vacuum, without regard to the reasonableness of the total number of hours spent for the entire case. In this case, the lodestar approach warrants a fee of $5,375.00.

The Court's conclusion that the fee requested in this case is unreasonable in light of the factors set forth in § 330(a)(3) and (4) is supported both by the Law Firm's own estimate in the worksheet that it filed in support of the Debtor's plan, and by the absence of a satisfactory

---

[4] See McKnight, 2013 WL 5182395, at *2 (in discussing Williams, stating that "[t]he Sixth Circuit vacated the award . . ."); In re Sharp, 2007 WL 3203134, at *3 (likewise misidentifying the Williams opinion as being by the Sixth Circuit).

-19-

explanation of specific circumstances that make the requested fee reasonable, in accordance with Local Bankruptcy Rule 2016-1(a)(3). The Court recognizes that the Law Firm consistently displays a high degree of skill and competence in the cases prosecuted in this Court. The Law Firm's level of skill and experience is reflected in its hourly rates. But the Law Firm simply has not provided the Court with a sufficient explanation about why so many hours were required to be performed in this very routine Chapter 13 case by attorneys having the level of skill and experience of the Law Firm. Paragraph 7 of the Trustee's objection, as explained at oral argument, is sustained.[5]

The Court will enter a separate order consistent with this opinion.

.

**Signed on September 05, 2014**

                                  **/s/ Phillip J. Shefferly**
                                  **Phillip J. Shefferly**
                                  **United States Bankruptcy Judge**

---

[5] The award in this opinion is made without consideration of the Supplement filed by the Law Firm. The Supplement purports to provide empirical data to support the Law Firm's contention that this particular Trustee is somehow unfairly targeting the Law Firm by filing more objections to its fees than do the other Chapter 13 trustees in this district. The Supplement was not filed timely, but instead was filed after the Court had already taken the Law Firm's application and the Trustee's objections under advisement. For that reason alone, the Court need not consider the Supplement. More importantly, the data contained in the Supplement does not pertain to any of the factors in § 330(a) of the Bankruptcy Code. As a result, the Supplement is not relevant to the question of whether the fee requested by the Law Firm in its application in this case is reasonable. Accordingly, the Court disregards the Supplement.

-20-

13-59610-pjs    Doc 84    Filed 09/05/14    Entered 09/05/14 15:30:07    Page 20 of 20